You may be seated. The clerk will call the next case. Case number 3420824. Julie Ann McGee is agent and guardian for the estate of Susan Biley. Appellant by James Thiessen v. Motorcycle Tour Conversions, Inc. Advocate by Craig Conrad. Mr. Thiessen, you may proceed. Thank you, Pam. I appreciate it. Wherever you're comfortable. Thank you. Thank you, Your Honor. Thank you. Thank you, all the judges. James Thiessen, court of the appellant. Ms. Milby. And, Your Honors, this appeal is from a Whiteside County case. The plaintiff is representing of the original plaintiff who's in a coma right now, so she's incapacitated, Ms. Bondy. But Ms. Bondy had purchased a Voyager convertible kit, which is a trike that is attached and installed onto a motorcycle, which turns it into three wheels in the rear of the bike, almost like training wheels. That was installed on her 1997 Harley Davidson motorcycle, and unfortunately in May 2011 she was involved in an accident on her motorcycle with that kit in Whiteside County in which she was incapacitated. The kit itself was disposed of by her now-deceased husband, Larry Jansen, approximately one week after the accident occurred. And it was unable to be located or found by either parties since that time. Approximately five months after the accident, the daughter, Ms. Milby, became the administrator, and she ultimately filed suit in 2013. Approximately year after year of discovery, the defendant's appellees filed a motion to dismiss for discovery sanction, which was in May 2014, and Judge Hoffman in Whiteside County dismissed the plaintiff's claim as a discovery sanction for violating Supreme Court Rule 219. So that ultimately is what's brought us to this point right now. We are appealing that decision. It's a mixed question of law and fact and abuse of discretion, clearly erroneous. There's really three issues on appeal. The first issue is whether the sanction of dismissing the case was appropriate under Supreme Court Rule 219 as an appropriate sanction for whether or not the evidence was disposed of deliberately. Another issue is under the facts of this case, was there any prejudice by having the kit itself actually disposed of And the final issue is, has the appellee presented any evidence that without the kit, it has been prejudiced in its defense. The first issue under 219, we believe the ruling by the judge was inappropriate under the facts of this case. The 219 standard should apply to a reasonable person. The evidence was disposed of by Mr. Janssen, but Mr. Janssen was not a sophisticated party to this case. It's not like it was destroyed by an expert retained by any of the parties, destroyed by any type of insurance adjuster, or destroyed by anybody or attorney or anything else who would have a reasonable expectation that the kit would be appropriate for the litigation. The daughter, Ms. Milby, had thought about litigation after the accident, but was concerned with the road conditions, thought that the road conditions had caused the accident, not the kit itself. But because of the fact that Mr. Janssen was not sophisticated and did destroy the evidence, you know, the evidence is no longer there, but we feel that under 219 that his destruction was not egregious and it did not warrant the complete sanction of dismissal of the case. You're talking about litigation that the daughter was maybe contemplating litigation. She was, that's correct. And what was the evidence of that, pictures of the roadway? She took some pictures of the roadway of a drainage ditch that she thought had contributed to the accident. But she also took pictures of the bike? Yes, I believe pictures of the bike were taken as well. Okay, showing the kit attached to the bike. That's correct, but it had suffered extensive damage during the accident. But yeah, those pictures were taken, but we still feel that Mr. Janssen's disposal of the bike was not appropriate under 219. There was no contemplation of suing the actual maker of the trike at that time. Well, the affidavit from the president of the company is saying that there was a number of things that the photographs would not help disclose and which severely prejudiced them because they failed to show all these questions that would have a bearing on any lawsuit against them. Yeah, and I'm not even, the foundation for that disclosure from the president, we have, he's mentioning hearsay conversations, the party, Mr. Janssen is deceased, he can't corroborate that affidavit. He says the identification number indicating when the kit was, and whether they were actually the manufacturer, whether the belly bracket was installed correctly, how the saddle bags were mounted, how the kit was mounted by the support stirrup, if the tire pressure, the condition quality of the motorcycle brakes, the operating condition of the motorcycle, the alignment of the front end of the motorcycle, whether the motorcycle and kit were in alignment, whether the motorcycle and kit were properly maintained, whether there was a failure of any parts or hardware on the motorcycle, preload of the kit is impossible to determine, whether U-bolts that Mr. Janssen used were tight or mounted correctly, whether there was missing parts or hardware, condition of the foot peg brackets, none of that seems to be hearsay right yet, right? That's correct. And so, you know, they say that that puts them at a disadvantage, the condition of the parts and hardware used on the kit, and what damage was caused by the accident, what damage may have been preexistent. You know, that's what the President says is the problem, and the expert testimony for the plaintiff in the case indicates that, in large measure, is rendering opinion based on a separate case. Was it Guta case? There was a prior case as well, Judge, where the same, similar lawsuit was filed. And it was against this manufacturer, and I assume that's where they had the tri-kit and all that kind of stuff. So he was saying it's the same kind of analysis, but it's the analysis he did in the Guta kit under different circumstances versus this accident. And so it's, is that problematic? Well... I mean, because what can the defendant do then? It is problematical, Judge, but the expert retained by the plaintiff has, in his report, has indicated that any kit would be sufficient to test. It didn't have to be this particular kit, because it was a design defect in the kit itself, as opposed to the manufacturer's defect. It was a design defect, meaning every kit that came out of the assembly line had this defect, and was therefore faulty, every single kit, which, of course, is different than manufacturing defects. Regardless of the way it may or may not have been installed on the trike? That's correct, Your Honor. Regardless of how it was installed, because of the, and the expert explains the reasons why, but essentially it came down to the fact that it had inadequate suspension in the trike itself. So if it hit a bump, one of the wheels would rise up accordingly, and it would lose traction, and then would also cause the bike to twist. And so if the bump was sufficient enough, the bike would lose control, because the suspension itself was inadequate when it came out of the assembly line, no matter how it was installed. Now, the expert from the plaintiff also indicates that it was modified. It was, I believe it was modified. A couple holes were put into it, but again, according to his report and his examination of it, that was irrelevant, because as soon as it came out, it was defective. It didn't matter. He didn't, he wrote in his report, he didn't need to analyze it itself. He didn't need to lay hands upon it. Any type of the actual thing itself, he didn't need to look at. He could look at an original trike kit, any trike kit, and make those opinions that he made about the insufficiency of the suspension, of some of the bolts as well. How could there be certainty it came from this manufacturer? What? As in the expert's opinions? How could there be certainty about that? Well, there's as much certainty as there would be in any expert's opinion. He tested it. He came to his basement. He tested the who tested it? Yes, the trike, right, the original trike. Not the one involved in the cracks. But yes, he tested one that came off the trike kit, and determined that was dangerous. How did he know this trike kit was from this manufacturer? Well, I believe it was the same kit that he tested. I thought his report was any kit from this manufacturer designed had a design effect in it. I understand that, but how did they know this trike kit was from this manufacturer? I think it was, I thought he had... That's a question raised by the President in their affidavit. Yeah. I thought the expert's report indicated it was obtained, it was the same identical trike kit obtained. From the photograph. Well, right, from the photograph. It was done from the photograph and from his examination of the original kit. The reason I'm asking the question is because the President claims that the photographs failed to show the following. Right. And it was whether they were the manufacturer. Right. But my impression of the expert report was that it was, that he was able to show that it was from that manufacturer. And so, right, I mean, not having the kit itself is problematic, except for the fact that every kit that came out, and it came out the assembly line, was defective. So the specific kit itself... Well, in their affidavit, it's true. They say, based upon the reports and photos that I have personally reviewed, I am certain that the trike kit involved was a Voyager trike kit manufactured by Motorcycle Tour Conversions. I have the same criticisms about the design defects of the Voyager kit used by Susan as I did when analyzing and reporting on the Voyager trike kit used in the Pluta case. I am certain the defect, you know, so then he goes on, the rest of it's really taken from his Pluta report, where he had the actual kit. Right. In that case. So I'm able to render an opinion with the design defects by analyzing the pictures of the trike kit. And then he goes on about the defective design. It contained the following defects in the defective design. But it's that one sentence that he doesn't go into underlying media. It just says, I am certain that the trike was used, was a Voyager trike kit. I mean, he doesn't say why. Well, right, yeah. I mean, it's an affidavit. We'd have to take it upon his word. But my understanding was from all the experience of, you know, he did see there were photographs which he tested were sufficient for identification and then the examination of the prior kit. I mean, there are other people who manufacture trike kits. I'm not aware of any that there are. That's what I'm asking. Yeah. I'm not aware of any. I didn't see much of a dispute that it was actually from this defendant. The defendant's claim is that, look, we need to examine the kit itself and determine what was wrong with it, not that we didn't make the kit at all. Not that it wasn't our kit. Right. Well, like I say, the affidavit by the president of the company, which they rely on amongst the problems, it says the photographs fail to show the identification number indicating when the kit was manufactured and whether the MTC was the manufacturer. So they do seem to be. Well, yeah, I guess there would be a dispute then from the expert and the president of the company, which I guess would be an issue that would go into weight. I mean, would the weight of such opinions, you know, obviously both witnesses being judged accordingly based on their, how they were presented and retained and then everything that would go into the judging of the weight of the witnesses. That's the next two minutes. Okay, thank you. But yeah, basically then I'll sum up. The expert's report does indicate that there was inadequate suspension, that the U-bolts were inadequate. There was three parts of the kit that he examined that it was bounced out of control and was only good in a straight line. Again, this wouldn't have mattered what modifications were made to the kit. All kits that came out the line had these problems. Ultimately then, the other issue would be, has the defendant showed they were prejudiced by not being able to examine this kit? And they cite the Shamanosky, and the first one, two, three of the Shamanosky analysis indicates, one, that there was no surprise because any kit can be examined, and two and three, there was no prejudice because the nature and the defect of the kit is evident by any kit, not the one used in this accident specifically. And so basically to sum up then, the conclusion would be, I think that the judge's ruling dismissing the case was too harsh under 219C. I don't feel they ever supported that harsh of a dismissal. Ultimately, it prevented the plaintiff from her day in court, and I think that there were issues that are more properly appropriate for the weight of the evidence to examine for the trier fact and examine the weight of the evidence and not just an outright dismissal based on the facts of this case. Any other questions? No. Thank you, Mr. Tyson. Thank you. Mr. Unrath, you may proceed. Thank you, Your Honor. Good morning. My name is Craig Unrath. I represent Motorcycle Tour Conversions. I'd like to begin with the standard of review. Counsel has suggested that the standard is governed, this case is governed by a clear and convincing evidence standard. I've been unable to locate any case law supporting that argument. All of the case law I have found states that this is subject to the abuse of discretion standard, which is the highest, most deferential standard available in our courts of review. So the issue before this court is whether the trial court's ruling can be considered arbitrary, fanciful, or so unreasonable that no person will ever adopt it. We like to point out that the court carefully analyzed the six criteria under the Shimanoski opinion from the Supreme Court, carefully reviewed the circumstances, the facts, and the law underlying this case, noted that we have established case law supporting a dismissal of this action. I think when you take all of this into account, it's very difficult to suggest that the trial court's ruling could be arbitrary or fanciful. Now, counsel began his argument by saying that the motorcycle was destroyed, the evidence was destroyed, by Larry Jensen, who was not a sophisticated party to this case. It's true, he is not a party to this case. We understand that. We also understand he's not sophisticated. Nevertheless, he did have sole authority to dispose of that property. Now, the plaintiffs have cited the Adams case, and it's a good case. It's almost, almost directly on point with what we have here. We have a fire that occurred in an apartment. They thought it might have been a couple of lamps that caused this fire, so they secured the lamps. Later on, they realized that, no, it wasn't the lamps, it was a couple of candles that may have started the fire. Well, they went back to the apartment, and the landlord, a third party, unsophisticated, unrelated party to the litigation, had disposed of that evidence. And the court naturally asked, well, how can we sanction the plaintiff in this case when the disposal or the destruction of the evidence was caused by this unrelated third party? Well, I said that the case is almost on all fours. The critical distinction between Adams and the case at bar is that the landlord did not have power of attorney. He did not have authority to stand in the plaintiff's shoes and litigate a case or file a claim or make a decision as to whether to pursue litigation. That's the critical factor there. Here, Larry Jansen, for five months after the accident, had sole authority to determine whether or not to pursue litigation, sole authority to determine what to do with her property, how to dispose of it, whether to dispose of it. Now, we submit that whether or not he actually made a declaration one way or the other, his conduct profoundly affected the outcome of this case, and he had every right to make a choice as to whether to pursue litigation. Whether it was by action or inaction, he made that choice. He chose not to litigate this case. He chose to destroy the evidence, and I'm afraid that Ms. Mildy has to take the case as she funded it five months later. Trinkets are the same. I mean, is there evidence that they're different, that they're manufactured by your company? The record does not list other manufacturers. However, I think it's fair to assume that there are a number of different manufacturers that produce similar products. There's nothing in the record about that. Pardon me? There is nothing in the record about that. What we have is the affidavit of the owner of the company saying that this does not appear to be, these photographs do not appear to be one of his products, and he also notes that we have no- He doesn't say that, does he? That's my understanding, is that he said that this is, or was unable to tell or confirm. He said the photographs failed to show the following. He doesn't say it's not his product. He says that, A, the photographs failed to show the following. A, an identification number indicating when the kit was manufactured and whether MTC was the manufacturer. He doesn't say it wasn't his. What you're saying is there's a reasonable inference that there are others out there in the marketplace. I think there's a reasonable inference, and the fact that the affidavit does state that we are unable to tell whether MTC was the manufacturer is a critical fact in this case. But that's, you know, it's meant that's different from saying it's not mine. It's not mine is an affirmative statement. I look at this photograph, and I know that's not our kit, versus I can't tell if it's our kit or not. I agree. There is a distinction there, but I think that both are meaningful distinctions. Certainly one would be stronger than the other. Plaintiffs admit, they're expert, admit that there have been modifications to this tri-kit, and he lists a couple of those modifications and suggests that those modifications had absolutely no effect on the performance of this tri-kit. Well, we're asked to trust him on that. How do we counter that argument? Unless we have the actual evidence to review, unless we can see how this was mounted, what additional parts were used, how it was aligned, how this thing was actually installed, we have no way of contesting that. So in plaintiff's brief, they suggest that we suffered no prejudice. I strongly disagree with that notion. I believe that we suffered extreme prejudice here. We have to take it on trust that the modifications made on this second-hand tri-kit installed by, well, we're not sure, but we think it was installed by Larry Jansen. There's no evidence in the case that he has any particular training or skill to install this tri-kit. We know for a fact that they never asked for any instructions or manuals from the company. All we know is that they bought a second-hand tri-kit. We have no idea what condition that tri-kit was in. It was installed by somebody, but no evidence at all that this person was capable of installing it correctly. And we're asked to say that the photographs taken by a non-expert is sufficient that we should just trust that. We should trust that these modifications had no effect on the performance of the tri-kit. And, you know, what I'm wondering about is the, because this is a drastic remedy, it's the nuclear remedy. I agree. It's a dismissal lawsuit without, you know, against the manufacturer. Now, was there a, you know, there are times where, for example, an instruction can be given to the jury that a party had control of the evidence and they can't produce the evidence, provide it, and so forth like that. There are those instructions that are given to the jury, not routinely, but sometimes when appropriate, failure to produce evidence. And here you've got a lot of questions that you can raise if they introduce this expert about the photographs. And you could raise all these things that the company president has talked about and perhaps have your own expert to say why that's not true and all these other problems that no one will ever know because you don't have the bike, you don't have the tri-kit, you don't know exactly, you can't tell from these photographs exactly what condition the tri-kit was in when it was installed, who installed it, how they installed it, how good they were at installing it. I mean, you know, there's a number of points that the president raised all the way to Q, A through Q, you know, of problems. Would all that mean that there wasn't anything that, would that justify the nuclear option? Because that's a question like in the case that you raised. And so the distinction, part of the distinction in the case you raised, it was a third party, not an agent or the deceased husband of the disabled person, right? Right. And that's one of the decisions you make in the case. But is that distinction enough? I mean, these are always drastic remedies when you dismiss a lawsuit because of this. When there is some evidence here. I mean, there's evidence, you got this expert saying tri-kits are tri-kits. And saying that, and granted, that also could be, like much of the expert's opinion is based on the expert's opinion from a former case where I'm assuming they had the tri-kit. I can't read, I've got the exhibit thing, and it's hard to read that because it's pretty dark, you know, the pages of the former opinion, I think, in the Puta case. But, you know. Your Honor, it's a very long question. I'm sorry. If you were on the stand, or I was on the stand, we'd object to the compound question. But let me see if I can. You can do that now. Let me see if I can reduce it. I think it's what you're saying is the nuclear option justifiable under the circumstances of this case. Right. And my answer to that is that based on the case law, this is not something I'm asserting. The case law states that no matter if it's a design or a manufacturing defect claim, any time you have a claim for strict liability, you have to be able to prove proximate cause. And the cases have said that when you lose the evidence in its entirety, it affects not only the defendant, it affects the plaintiff as well. Because plaintiff is unable to satisfy its burden of proof. Proximate cause has to be established. And if you don't have that right there, then we're speculating. We're speculating that the design defect caused it as opposed to a faulty U-bolt that was improperly installed. Isn't that an argument that can be presented to the fact finder, that very argument? And what we'd be asking the jury to do is say, look, we don't know. We don't know what happened here. I mean, the plaintiff has the burden of proof. So you'd be saying, you know, everything's speculation here. I'm saying that the plaintiff is incapable of establishing their case, even if we just sat with our arms folded. They're asking the jury to speculate that this accident was caused by a design defect when it could have been caused by any number of different things. But the important thing here is this, and again, this is also based on the case law, is that by destroying evidence, a plaintiff should not be allowed to decide what type of defense we're going to put on. And in a sense, when we don't have the physical evidence, that's precisely what they're doing there. They're taking control of our case. They're saying you have to assume that this expert, when he says that the modifications to the bike, that the installation of the bike, the tri-kit was all appropriate and had no impact on the performance of the product, you have to assume that that's true. Well, see, that's their, I'm sorry, that's their burden. And they've got an expert saying that, that the expert says, I can look at these photographs and tell you. And he's basing that entirely on speculation. And we don't know, there are so, as a matter of fact, on page 27 of our brief, we've listed all the things we don't know that he doesn't know about how this was maintained, how it was installed, how it was allowed. Well, you can't identify whether it's your part. No. Correct? Absolutely not. We don't know what parts were used to attach this tri-kit to the motorcycle. So we're left to speculate. And the jury's going to speculate, too. I noticed on, you know, when you mentioned your brief on page 27, there was nothing raised about the manufacturer. We raised the date, serial number, but no, you're right, that's not shown there on the brief. But it is in the affidavit. In the end, a decision was made in this case, and it's a decision that our courts have found that a reasonable person would understand that if you're going to claim that there's been an accident involving a motorcycle, a vehicle, or anything else, you're going to have to retain that evidence. You're going to have to preserve it. It's unfortunate that Larry Jansen chose not to pursue litigation in this case, but he had that right. As a matter of fact, he had the sole right to make that determination. And for our part, for the part of Motorcycle Tour Conversions, why didn't they contact us? Why didn't they file suit earlier? She received, Ms. Millby received a power of attorney five months after the accident. Perhaps, perhaps if she had filed suit or given Motorcycle Tour Conversions some notice that they were pursuing litigation in this case, perhaps we could have located that trike kit. Perhaps we would have been able to get some evidence here. And that's important. That's a significant issue here. I'd like to point out the Szymanowski case, which is distinguishable from our own case on a number of grounds. But, you know, they point out, they said the power steering unit on that Ford vehicle was not totally destroyed. They still had something. They still had something that they could base, perhaps analyze and contest the experts' opinions. In our case, we have nothing. Not only that, but we have a lack of diligence. We, this was not, we didn't come to our attention until two years after the accident. In the end, plaintiff has to bear the burden of that mistake. Thank you very much. If there are no further questions, I urge the Court to affirm. Thank you. Thank you, Mr. Onuf. Mr. Tyson for rebuttal. Thank you, Court. Real briefly, a couple issues I just wanted to address is Mr. Jansen, he was the power of attorney for property only. And obviously, again, I think it's a fortune that he did dispose of the property, but he made that decision. He wasn't contemplating a lawsuit. We're not talking about, again, an attorney or an expert witness or somebody else. How is that reasonable that there's a serious accident and his wife is in a coma, that there isn't going to be some sort of litigation? It just almost does not seem very likely that after an accident somebody doesn't think about having to at least demonstrate, you know, there was something in the roadway or, you know, just for insurance purposes, you know, that she's going to be hospitalized for a long time or a best case scenario, she's in a long-term care facility. Do you really think it's reasonable that he said, you know, there's not going to be any reason to keep this motorcycle or this kit that was just installed? You know, I mean, obviously, if we represented him at the time, we would have instructed otherwise. I think anybody who's experienced in litigation would. I can't speak for what he was or wasn't thinking. Again, my concern about this 219 sanction being so harsh and so punitive is where does it end? Does anybody who has a potential claim, you know, how do we cut it off? You know, obviously, Mr. Jansen would have had a consortium claim. Okay, but what about the children? I guess they would have another claim maybe. I guess they wouldn't have a claim. So where do we end the line as far as how does it stop? Who do we stop punishing for his bad choice? I mean, it seems that within five months of this accident, her daughter took action to become the power of attorney. Did she know immediately within this week of the accident that he had gotten rid of this motorcycle? Should she have taken action sooner? Those are great questions, Your Honor. I know she did contemplate potential litigation herself but was thinking of the roadway and not thinking of the trike itself. But, yeah, that's an excellent question. I would just stand back to the 219. It just ultimately prohibits the plaintiff's stay in court for something that an unsophisticated party did for reasons, unfortunately, we don't know. And the other issue I'd like to raise is... The sanction is based on the defendant's stay in court. That's correct. I mean, these are always terrible cases and hard on everybody. And the defendant's stay in court is you've got a trike's kit that was a used kit, evidently. You're right. It was used. She had used it for several years. So it's put on and modified. And aside, to take out the question about who manufactured it, there are all these other potential issues that are raised just by the president of the company that people will never know and can't be gleaned from the photographs according to that affidavit. That's correct. Is that a major problem then for the defendant based on the destruction or loss of the motorcycle and the kit? Your Honor, I look at it more as a problem for the plaintiff, as in any cross-examination. The defendant, despite what counsel said, won't have to just stand idly by in this case. They'll have plenty of defenses. And the first one that you would throw out to this expert to discredit him would be, well, did you examine the kit itself? Just like if you're deposing an expert in a personal injury medical case. You want to know, well, what records did this expert review? And if he didn't review some, then it's open for the defense to attack the credibility. The same thing would apply in this case. From what we have, it appears to me that the expert is saying that I don't need to. All tri-kits are the same. I know there were some, I can see that there were some modifications. But I've looked at these tri-kits before. In the Pusa case, I looked at the tri-kit. And I found in that case, these are the design defects. And so that's what I say happened in this case. That's correct. That's what he said. So to the argument that you didn't look at this one, I don't need to. If you look at one, you don't need to look at the rest of them. They're all done the same. Right, and that also bolsters the plaintiff's case. But at the same time, the defendant can still attack the credibility for the jury to say, hey, he didn't actually examine this kit. Like the point your Honor was making about the fact that it was used, the fact that there were some modifications, those are all issues that they can hammer home to the jury and ask prior to the fact. And the jury can say, we believe this expert or we don't. And the defense certainly is free to retain their own expert to test the kit and to disprove it and say, you know what, we tested it. You're wrong. The suspension is fine. You're wrong. It doesn't lose control over bumps. You're wrong. We've done it. We've tested the original kit, just like you've done, and we've come to the opposite conclusion. And then, again, that goes to the weight for the jury to make a decision. That's a question I've got. If they say we just bought the kit from the manufacturer, it's a brand-new kit, that would be a stronger argument. It would be. Rather than a used kit that was modified. It's true. But if the same design defects are present in all of them, then the assumption would be that it was also present in the used kit. Counsel, there's one minute. What you're saying. Just going to be a valid expert and you can find one to say anything. Well, I mean, yes. But I don't think the defense is precluded from finding it. If you find a nurse that's going to say there's a wrong design defect, yeah. I'm assuming they can find somebody else who can say something like that. I mean, I'd just like to simplify it. It would. I mean, we don't know because they haven't presented any real expert testimony about that disproving our experts' claims. But, you know, there's an assumption that they could probably retain one as well. And then the experts would argue amongst themselves, and then the jury would decide whether or not the Tri-Kit was unsafe or not, which would be providing the plaintiff for day in court. And if there's no further questions, I'll conclude with that. Thank you, Mr. Treison. Thank you very much. Thank you both for your arguments here today. This matter will be taken under advisement and a decision will be issued to you as soon as possible. And right now I'll take a brief recess for a final change.